<u>Attorney Grievance Commission v. Sheron A. Barton, Misc. Docket AG No. 86, Sept.</u>
<u>Term, 2012, Misc. Docket AG No. 13, Sept. Term, 2013, and Misc. Docket AG No. 57,</u>
<u>Sept. Term, 2013, Opinion by Battaglia, J.</u>

**ATTORNEY DISCIPLINE - SANCTIONS – INDEFINITE SUSPENSION**

Respondent, Sheron A. Barton, violated Rules 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (b), 1.16(d), 5.3(a), (b) and (c), 5.4(b), 5.5(a), and 8.4(a), (c) and (d) of the Maryland Lawyers' Rules of Professional Conduct. Indefinite suspension is the appropriate sanction when an attorney neglects client affairs, fails to refund unearned fees, commingles funds, fails to supervise a nonlawyer employee and makes a misrepresentation to the tribunal.

Circuit Court for Montgomery County, Maryland

Case Nos. 28463M; 28714M; 29405M

Argued: December 9, 2014

IN THE COURT OF APPEALS OF MARYLAND

Misc. Docket AG No. 86

September Term, 2012

Misc. Docket AG Nos. 13 and 57

September Term, 2013

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

SHERON A. BARTON

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Wilner, Alan M. (Retired, Specially Assigned)
JJ.

Opinion by Battaglia, J.

Filed: March 2, 2015

Sheron A. Barton, Respondent, was admitted to the Bar of this Court on December 17, 2002. On February 25, 2013, May 1, 2013 and October 23, 2013, the Attorney Grievance Commission, ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16-751(a),[1] filed three separate Petitions for Disciplinary or Remedial Action against Respondent related to her role as the supervising attorney of the Cardinal Law Firm, located in Camp Springs, Maryland.

In its initial petition, filed on February 25, 2013, in which Winifred Winston, Brent Ellis, Howard and Avon Chapman ("the Chapmans"), and Joseph and Ernestine Johnson ("the Johnsons") were complainants, collectively identified as the "Complaint of Bar Counsel," as well as Rosemary Tyner and Teresa Barnes, Petitioner alleged that Respondent violated the following Maryland Lawyers' Rules of Professional Conduct ("Rule"): 1.1 (Competence),[2] 1.3 (Diligence),[3]

---

[1] Rule 16-751(a) provides, in relevant part:
> (a) **Commencement of disciplinary or remedial action.** (1) *Upon approval or direction of Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

[2] Rule 1.1 provides:
> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

[3] Rule 1.3 provides:
> A lawyer shall act with reasonable diligence and promptness in representing a client.

1.4(a) and (b) (Communication),[4] 1.5(a) (Fees),[5] 1.15(a) and (b) (Safekeeping Property),[6]

---

[4] Rule 1.4 provides, in relevant part:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5] Rule 1.5 provides, in relevant part:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[6] Rule 1.15 provides, in relevant part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall

(continued…)

2

1.16(d) (Declining or Terminating Representation),[7] 5.1(a), (b) and (c) (Responsibilities

of Partners, Managers, and Supervisory Lawyers),[8] 5.3(a), (b) and (c) (Responsibilities

---

(…continued)

be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.
(b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16-607 b.

[7] Rule 1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[8] Rule 5.1 provides, in relevant part:

(a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Maryland Lawyers' Rules of Professional Conduct.
(b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Maryland Lawyers' Rules of Professional Conduct.
(c) A lawyer shall be responsible for another lawyer's violation of the Maryland Lawyers' Rules of Professional Conduct if:
(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

The hearing judge made no findings of fact or conclusions of law regarding Rule 5.1(a), (b) and (c), and Bar Counsel filed no exceptions. We, therefore, will not discuss Rule 5.1.

3

Regarding Nonlawyer Assistants),[9] 5.4(a) and (b) (Professional Independence of a Lawyer),[10] 5.5(a) (Unauthorized Practice of Law; Multijurisdictional Practice of Law),[11] and 8.4(c) and (d) (Misconduct).[12]

---

[9] Rule 5.3. provides, in relevant part:

With respect to a nonlawyer employed or retained by or associated with a lawyer:
(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer;
(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Maryland Lawyers' Rules of Professional Conduct if engaged in by a lawyer if:
(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action;

[10] Rule 5.4 provides, in relevant part:

(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:
(1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons;
(2) a lawyer who purchases the practice of a lawyer who is deceased or disabled or who has disappeared may, pursuant to the provisions of Rule 1.17, pay the purchase price to the estate or representative of the lawyer.
(3) a lawyer who undertakes to complete unfinished legal business of a deceased, retired, disabled, or suspended lawyer may pay to that lawyer or that lawyer's estate the proportion of the total compensation which fairly

(continued…)

In a second petition, filed on May 1, 2013, the complainants were Arnell Simmons, Gwendelyn Rhett and Winifred Winston, clients of the Cardinal Law Firm, and Respondent was charged with violations of Rules 1.1 (Competence), 1.3 (Diligence), 1.4(a) and (b) (Communication), 5.3(a), (b) and (c) (Responsibilities Regarding Nonlawyer Assistants), 5.5(a) (Unauthorized Practice of Law; Multijurisdictional Practice of Law), and 8.4(d) (Misconduct). The Commission also charged Respondent with a violation of Rule 1.16(d) (Declining or Terminating Representation) with respect to Ms. Winston's complaint.

In a third petition, filed on October 23, 2013, the complainants were Alma Miljkovic and Christine Gray-Knight, clients of the Cardinal Law Firm, and Respondent

(…continued)
represents the services rendered by the former lawyer;
(4) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement; and
(5) a lawyer may share court-awarded legal fees with a nonprofit organization that employed, retained or recommended employment of the lawyer in the matter.
(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.

[11] Rule 5.5(a) provides:
(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

[12] Rule 8.4 states, in pertinent part:
It is professional misconduct for a lawyer to:
* * *
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;

5

was charged with violations of Rules 1.1 (Competence), 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.15(a) (Safekeeping Property), 1.16(d) (Declining or Terminating Representation), 5.3(a), (b) and (c) (Responsibilities Regarding Nonlawyer Assistants), 5.5(a) (Unauthorized Practice of Law; Multijurisdictional Practice of Law), and 8.4(a) and (d) (Misconduct).[13] The Commission also charged Respondent with a violation of Rule 1.5(a) (Fees) with respect to Ms. Miljkovic's complaint.

By Order, we referred the initial petition to Judge Marielsa A. Bernard of the Circuit Court for Montgomery County for a hearing, pursuant to Maryland Rule 16-757.[14]

---

[13] Rule 8.4(a) provides:
> It is professional misconduct for a lawyer to:
> * * *
> (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

[14] Maryland Rule 16-757 states:
> **(a) Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.
> **(b) Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.
> **(c) Findings and conclusions.** The judge shall prepare and file or dictate

(continued…)

Respondent was personally served with the Petition for Disciplinary or Remedial Action and the Writ of Summons, to which she filed a timely response.

By Order, we referred the second petition to Judge David A. Boynton of the Circuit Court for Montgomery County for a hearing, pursuant to Maryland Rule 16-757. Respondent was again personally served with the Petition for Disciplinary or Remedial Action, our Order, and the Writ of Summons, to which Respondent filed a timely response. We issued an Order consolidating the first two petitions and transferred the second petition from Judge Boynton to Judge Bernard.

By Order, we referred the third petition to Judge Bernard for a hearing, pursuant to Maryland Rule 16-757. Respondent was served through counsel with the Petition for Disciplinary or Remedial Action, our Order and the Writ of Summons. Respondent filed a Motion to Extend Time and Consolidate Disciplinary Petitions. We issued an Order consolidating the third petition with the two other previously consolidated petitions.

---

(…continued)
> into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.
> **(d) Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.
> **(e) Transmittal of record.** Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

Respondent was served through counsel with Interrogatories, a Request for Production of Documents and a Request for Admission of Facts and Genuineness of Documents, to which no response was forthcoming. Bar Counsel then filed an Emergency Motion for Sanctions pursuant to Maryland Rules 2-432 and 2-433, to which no answer was filed. On the Friday prior to the January 27, 2014 hearing date on the Consolidated Petition, Respondent responded to the discovery requests, albeit over two weeks out of time. On the hearing date, prior to taking evidence, after arguments of counsel, Judge Bernard granted Bar Counsel's motion and determined that:

> Based on the tardiness in Respondent's response to discovery (Respondent incompletely responded to Petitioner's discovery request in the afternoon on the last business day before trial, Friday, January 24, 2014), this Court deemed each Request for Admission "admitted" but deferred ordering any relief so that such relief could be addressed if and when an issue arose at trial.

During the evidentiary hearings, Bar Counsel presented testimony from Gwendelyn Rhett, Teresa Barnes, Arnell Simmons and Winifred Winston, all of whom had been complainants included in the first and second petitions, as well as relied on the deemed admissions. Bar Counsel introduced various documents, which were admitted into evidence, including a Post-Trial Memorandum from the United States Trustee for Region 4 ("Trustee Memo"), as well as a Memorandum of Decision from the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court Memo") to which was appended an Order directing Respondent to refund fees in the Winston case. Bar Counsel also introduced emails and letters between Respondent and Ms. Rhett, as well as the complaints to Bar Counsel from Ms. Rhett, Ms. Barnes, Ms. Simmons and

8

Ms. Winston, and Barton's response to Bar Counsel about each complaint, which were admitted into evidence. Finally, a letter from Barton to Richard Tolbert, the former office manager of the Cardinal Law Firm, as well as an email exchange between the two, were admitted into evidence.

Barton testified on her own behalf; she was precluded from calling Leon Sutton, an individual who had served as a paralegal at her Washington D.C. office, as a witness, because of her failure to respond to the Request for Admissions. Respondent did introduce various documents, which were admitted into evidence, including correspondence between Respondent and M&T Bank, a case list from the Cardinal Law Firm, two emails between Barton and Mr. Tolbert, an email from Barton to a document courier service, the federal Form 1099 for each of her employees from 2011, an application for statement of charges and a civil complaint filed by Barton against Mr. Tolbert, which were filed in the District Court of Maryland for Prince George's County and the Circuit Court for Prince George's County, respectively, as well as a case information document showing pending criminal charges against Mr. Tolbert.[15]

---

[15] Following the issuance of the hearing judge's findings of fact and proposed conclusions of law, Respondent filed a motion to supplement the record to include a subpoena for her to appear in the Circuit Court for Prince George's County as a witness for theft allegations against Mr. Tolbert as well as her application for statement of charges filed with the District Court of Maryland for Prince George's County. Respondent argues that this evidence shows that Mr. Tolbert, not Respondent, is the thief. The Application for Statement of Charges had already been admitted at the hearing as Exhibit Number Seven; the subpoena directed to her is irrelevant. We deny the motion to supplement the record.

Judge Bernard issued Findings of Fact and Conclusions of Law in which she ultimately determined that Respondent violated Rules 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (b), 1.16(d), 5.3(a), (b) and (c), 5.4(a) and (b), 5.5(a), 8.4(a), (c) and (d).

Judge Bernard's Findings of Fact and Conclusions of Law state:[16]

In light of the admitted Requests for Admissions, the additional evidence submitted by the parties at trial, the trial testimony and the arguments of counsel, this Court finds the following facts to have been established by clear and convincing evidence:

1. Respondent graduated from Nova Southeastern University in August 1998 and was admitted to the Bar of the Court of Appeals of Maryland on December 17, 2002.

2. In 2010 and 2011, Respondent owned and operated a law firm located at 5897 Allentown Rd., Camp Springs, Maryland, doing business under the name "Cardinal Law Firm". Respondent owned and operated this firm. Respondent also maintained a law office in Washington D.C.

3. Respondent was the supervising attorney of the Cardinal Law Firm.

4. Cardinal Law Firm regularly advertised in the local "Pennysaver" advertising circular, holding itself out as handling bankruptcy cases.

5. The Camp Springs office of the Cardinal Law Firm primarily represented clients regarding the filing of bankruptcy petitions.

6. Richard Tolbert (hereinafter referred to as "Mr. Tolbert") owned the building at 5897 Allentown Road, Camp Springs, Maryland, at which the Cardinal Law Firm was located.

7. Respondent employed Mr. Tolbert as the office manager for the Camp Springs office of the Cardinal Law Firm. Mr. Tolbert worked full-time at the Camp Springs office while Respondent primarily worked in her office in the District of Columbia.

---

[16] Internal record citations within Judge Bernard's Findings of Fact and Conclusions of Law have been omitted.

8.  Mr. Tolbert, who is not licensed to practice law, regularly met with prospective clients of the Cardinal Law Firm, accepted their cases, and set the fee that would be charged by the Cardinal Law Firm. Mr. Tolbert led several clients, such as Winifred Winston, to believe he was an attorney and regularly met with these prospective clients before they met with Respondent.

9.  Respondent permitted Mr. Tolbert to meet with prospective clients, to accept cases and set fees, and was aware that Mr. Tolbert was doing so on behalf of the Cardinal Law Firm.

10.  At trial, Respondent testified that Mr. Tolbert's duties were limited to taking client names and contact information and immediately forwarding this information to her. She indicated that he had no authority to charge client fees or to negotiate checks. This Court does not find Respondent's testimony to be credible, however, and it is contradicted by all of the other evidence submitted at trial. In a letter to Richard Tolbert (and apparently also sent to the U.S. Trustee's office), Respondent stated "We entered into an arrangement around September/October of last year 2010, where you would work for me as an accountant, office manager, book[k]eeper, and sometimes intake person, you collected money for the firm." Respondent also stated: "I gave you the Maryland rules to read and told you what the legal fees for bankruptcy cases in Maryland were supposed to be, additionally you worked with other attorneys before, so you knew." Respondent further stated in the letter that she discovered that: "Mr. Tolbert spoke to new clients and had them sign retainers without giving me an accurate list of names and numbers who these clients are." Respondent also told William Ramsey, an Investigator with the Attorney Grievance Commission, that she collected and deposited fees at first, but later Mr. Tolbert took over that role, although Respondent asserted that this statement only pertained to fees she had previously quoted to clients she had already met. Several emails introduced at trial also indicated that Mr. Tolbert and the firm were accepting client cases and charging fees independent of Respondent's guidance. Respondent's trial testimony that she had, on several occasions, educated Mr. Tolbert and Ms. Crawford on appropriate and reasonable fees in bankruptcy cases only further details Respondent's level of participation and awareness.

11.  Additionally, Arnell Simmons, Winifred Winston, and Gwendelyn Rhett, all of whom this Court found to be credible, each testified that Mr. Tolbert specifically informed them that Respondent would be the attorney

handling their case. Each witness also testified that Mr. Tolbert provided them with contact information for Respondent during their initial meeting.

12.  Mr. Tolbert frequently advised clients regarding what type of bankruptcy petition would be appropriate to be filed in their case, routinely accepted retainers and fees from clients, and deposited the funds he received from the firm's clients in an account maintained under the name "A. Barton Law Firm". This account was not an escrow account.

13.  Respondent permitted Mr. Tolbert to deposit funds in her "A. Barton Law Firm" operating account.

14.  Respondent was aware that Mr. Tolbert deposited client retainers in the "A. Barton Law Firm" operating account.

15.  Respondent gave Mr. Tolbert a limited number of checks to disburse funds from the "A. Barton Law Firm" operating account to pay office expenses. Notably Respondent testified during trial that she continued to provide "blank" checks to Mr. Tolbert for several months after she had learned that Mr. Tolbert had stolen money from the firm.

16.  Respondent regularly received bank statements for the "A. Barton Law Firm" operating account during 2010 and 2011 but testified that she did not review them.

With respect to the specific allegations of Ms. Winston, the hearing judge found:

17.  Respondent filed a Chapter 13 bankruptcy petition on behalf of her client, Winifred Winston (hereinafter referred to as "Ms. Winston") on or about March 10, 2011.

18.  Ms. Winston paid the Cardinal Law Firm a flat fee of $4,000.00, which Respondent disclosed on a Disclosure of Compensation filed in the Bankruptcy Court. Ms. Winston later paid the Cardinal Law Firm an additional fee payment of $526.00, but Respondent did not disclose Ms. Winston's $526.00 payment to the Bankruptcy Court.

19.  Ms. Winston first met Respondent on April 21, 2011, at a 341 hearing on her bankruptcy case. Respondent arrived late for the hearing. According to Ms. Winston's testimony, Respondent was unprepared for this hearing and unfamiliar with Ms. Winston's case.

20. After the hearing on April 21, 2011, Ms. Winston discussed her case with Respondent and told her that she wanted to sell her condominium and to have the second mortgage removed. Respondent told Ms. Winston to contact Mr. Tolbert to discuss the issues regarding sale of the condominium and removal of the second mortgage. Upon contacting Mr. Tolbert, Ms. Winston was told that an additional fee would be required, which Ms. Winston paid by a check payable to the A. Barton Law Firm.

21. Respondent failed to appear in court at a confirmation hearing in Ms. Winston's case on May 24, 2011. Ms. Winston testified that she had to make several calls to the Cardinal Law Firm in an effort to find Respondent to see if she would appear. Ms. Winston was told by office personnel that Respondent was on her way to court.

22. Ultimately, Respondent did not appear, but sent another attorney, Donya T. Zimmerman, in her place. Ms. Zimmerman had not met with Ms. Winston and was not familiar with her case.

23. During the representation, Ms. Winston made numerous attempts to reach Respondent to discuss her case, but Respondent failed to return her calls.

24. Ms. Winston discharged Respondent as her counsel on October 12, 2011.

25. In February 2012, the United States Bankruptcy Court for the District of Maryland ordered Respondent to refund $3,776.00 to Ms. Winston within 60 days. The Bankruptcy Court ordered the refund because it found that Respondent improperly failed to appear at the May 24, 2011 hearing, had been unresponsive to Ms. Winston's inquiries, failed to file an amended plan, and gave her inaccurate advice.

26. Respondent confirmed during her testimony at trial that she has not refunded any fees to Ms. Winston.

With respect to the complaints of Brent Ellis, the Chapmans and the Johnsons, the hearing judge found:

27. Respondent filed a Chapter 13 bankruptcy petition on behalf of Brent Ellis (hereinafter referred to as "Mr. Ellis") on or about August 5, 2011.

13

28. Respondent filed a Disclosure of Compensation in Mr. Ellis' case, reporting that Mr. Ellis paid a flat fee of $4,500.00.

29. Respondent filed a Chapter 13 bankruptcy petition on behalf of her clients, Howard and Avon Chapman (hereinafter referred to as "the Chapmans") on or about August 11, 2011.

30. Respondent received a fee of $4,000.00 from the Chapmans.

31. The Chapmans paid the fee by a check to the A. Barton Law Firm.

32. Mr. Tolbert set the fee and directed the Chapmans to make their check payable to the Cardinal Law Firm.

33. The United States Bankruptcy Court for the District of Maryland ordered Ms. Barton to refund $2,000.00 to the Chapmans, finding that her filing of the Chapter 13 petition was a "useless act that could not accomplish anything".

34. Respondent has not refunded any portion of the Chapmans' fee.

35. Respondent filed a bankruptcy petition on behalf of Joseph and Ernestine Johnson (hereinafter referred to as "the Johnsons") on August 11, 2011.

36. Respondent's firm received a fee of $4,500.00 from the Johnsons.

37. The Johnsons initially met with Mr. Tolbert, who advised them that they should file a Chapter 13 bankruptcy petition.

38. Mr. Tolbert informed the Johnsons that the Cardinal Law Firm would charge them a $4,500.00 fee for representing them in a Chapter 13 bankruptcy proceeding and led the Johnsons to believe that he was an attorney.

39. Respondent first met with the Johnsons on November 30, 2011.

40. At the time the Cardinal Law Firm represented the Johnsons, Respondent was the only attorney employed by the Cardinal Law Firm licensed to practice law in Maryland or before the United States District Court for the District of Maryland.

14

41. On March 21, 2012, the United States Bankruptcy Court for the District of Maryland ordered Respondent to refund $3,000.00 to the Johnsons.

42. Respondent has not refunded any portion of the Johnsons' fee.

With respect to the complaint of Ms. Tyner, the hearing judge found:

43. Rosemary Tyner (hereinafter referred to as "Ms. Tyner") retained the Cardinal Law Firm to represent her regarding a bankruptcy matter in October 2010.

44. Ms. Tyner initially met with Mr. Tolbert.

45. Mr. Tolbert advised Ms. Tyner to stop paying her mortgage payments.

46. Mr. Tolbert advised Ms. Tyner to use the money saved from not making her mortgage payment to pay her fee to the Cardinal Law Firm.

47. Ms. Tyner paid the Cardinal Law Firm $4,500.00 as her fee to file a Chapter 13 bankruptcy case.

48. Ms. Tyner met Respondent at her pre-confirmation hearing on February 19, 2011.

49. At the pre-confirmation hearing on February 19, 2011, Respondent showed Ms. Tyner a copy of a payment plan to be submitted on her behalf. Ms. Tyner had not been shown the payment plan prior to the pre-confirmation hearing.

50. Ms. Tyner attempted to communicate with Respondent about the status of her case but Respondent failed to keep her informed.

51. Ms. Tyner's bankruptcy petition was dismissed after Respondent failed to appear in court for a hearing.

52. In October 2011, Mr. Tolbert contacted Ms. Tyner to say that she was late in making a payment on her automobile loan and that she should bring in $500.00 to Mr. Tolbert.

53. Pursuant to Mr. Tolbert's request, Ms. Tyner delivered to Mr. Tolbert $300.00.

54. Ms. Tyner later learned that her automobile loan payment was not late.

55. Respondent has not accounted for the $300.00 paid by Ms. Tyner and has not returned those funds to her.

With respect to the complaint of Ms. Barnes, the hearing judge found:

56. The Cardinal Law Firm filed a bankruptcy petition on behalf of Teresa P. Barnes (hereinafter referred to as "Ms. Barnes") on April 19, 2011.

57. Ms. Barnes paid the Cardinal Law Firm a fee of $4,474.00 by a check payable to the A. Barton Law Firm.

58. Ms. Barnes initially met with Mr. Tolbert, who advised her on what kind of bankruptcy petition to file.

59. Mr. Tolbert informed Ms. Barnes of the amount of the fee she would be charged by the Cardinal Law Firm.

60. On February 8, 2012, Ms. Barnes received a summons regarding a suit filed against her by Discover Bank.

61. Ms. Barnes attempted to contact Mr. Tolbert, who did not respond to her calls.

62. Ms. Barnes contacted Respondent by telephone in February 2012.

63. Respondent informed Ms. Barnes that she had no knowledge of Ms. Barnes's case, and that she was no longer affiliated with the Cardinal Law Firm.

64. Respondent did no work on Ms. Barnes's bankruptcy case.

65. Respondent has not refunded any portion of the fee paid by Ms. Barnes.

With respect to the complaint of Ms. Simmons, Judge Bernard found:

66. Arnell W. Simmons (hereinafter referred to as "Ms. Simmons") retained the Cardinal Law Firm in December 2010, to represent her regarding a bankruptcy.

67. Ms. Simmons paid to the Cardinal Law Firm $4,774.00 by checks payable to the A. Barton Law Firm.

68. Ms. Simmons initially met with Mr. Tolbert to discuss her case.

69. Mr. Tolbert accepted her case, informed her of the fee, and advised her that she should file a Chapter 7 bankruptcy petition.

70. Ms. Simmons later met with an associate of Respondent, who is an attorney. That attorney advised Ms. Simmons to file a Chapter 13 petition.

71. The attorney also advised Ms. Simmons to stop paying her mortgage so that she could pay her attorney's fee to the Cardinal Law Firm.

72. Ms. Simmons stopped making mortgage payments based on the advice given to her by the Cardinal Law Firm.

73. The Cardinal Law Firm filed a Chapter 13 bankruptcy petition on behalf of Ms. Simmons in February 2011.

74. Ms. Simmons met with Respondent three times.

75. Ms. Simmons also met with other lawyers and staff of the Cardinal Law Firm.

76. Respondent failed to keep Ms. Simmons informed of the status of her case.

77. Respondent failed to file required papers on behalf of Ms. Simmons, resulting in the Bankruptcy Court issuing a deficiency notice.

78. Ms. Simmons attempted to contact Respondent about the status of her case, but was unable to reach her.

With respect to the complaint of Ms. Rhett, the hearing judge found:

79. On March 4, 2011, Gwendelyn Rhett (hereinafter referred to as "Ms. Rhett") met with Mr. Tolbert and retained the Cardinal Law Firm to represent her in a bankruptcy matter.

80. Mr. Tolbert advised Ms. Rhett that she should file a Chapter 7 bankruptcy petition.

17

81. Mr. Tolbert advised Ms. Rhett that the Cardinal Law Firm would charge her attorney's fees in the amount of $2,000.00 and that the filing fee would be $229.00.

82. By April 4, 2011, Ms. Rhett paid the entire fee to the Cardinal Law Firm by checks payable to A. Barton Law Firm.

83. At Ms. Rhett's meeting with Mr. Tolbert on March 4, 2011, Mr. Tolbert gave Ms. Rhett Respondent's business card and told Ms. Rhett that she could call Respondent any time.

84. Ms. Rhett sent a message by electronic mail to Respondent on April 13, 2011, asking her questions about the status of her bankruptcy case.

85. Respondent replied to her e-mail message on May 2, 2011, responding to her questions.

86. In her May 2, 2011 reply to Ms. Rhett, Respondent did not indicate that she was no longer connected with the Cardinal Law Firm or Mr. Tolbert.

87. On May 6, 2011 Ms. Rhett discharged the Cardinal Law Firm and requested a refund of her fee.

88. On May 11, 2011 the Cardinal Law Firm responded in writing to Ms. Rhett, agreeing to refund the full amount paid.

89. Thereinafter, Ms. Rhett testified that Mr. Tolbert returned her fee in person, by check, along with a gift basket.

With respect to the complaint of Ms. Miljkovic, the hearing judge found:

90. In January 2011, Alma Miljkovic (hereinafter referred to as "Ms. Miljkovic") retained the Cardinal Law Firm to represent her in connection with a bankruptcy matter.

91. Ms. Miljkovic initially met with Mr. Tolbert.

92. Mr. Tolbert accepted the case on behalf of the Cardinal Law Firm and informed Ms. Miljkovic that the fee would be $2,000.00 plus a filing fee of $299.00.

18

93. On February 25, 2011, Ms. Miljkovic gave Mr. Tolbert a check for $1,299.00, payable to the A. Barton Law Firm.

94. Mr. Tolbert informed Ms. Miljkovic on February 25, 2011, that Respondent would be the attorney handling her case.

95. Mr. Tolbert gave Ms. Miljkovic papers to complete in order to prepare the bankruptcy petition.

96. Mr. Tolbert advised Ms. Miljkovic to stop making payments on her mortgage loan.

97. Mr. Tolbert advised Ms. Miljkovic to use all of the available credit on her credit cards.

98. On April 13, 2011, Ms. Miljkovic paid $1,000.00 to the Cardinal Law Firm by a check payable to the A. Barton Law Firm.

99. Ms. Miljkovic's payments were not deposited in an attorney escrow account.

100. In the spring and summer of 2011, Ms. Miljkovic called the Cardinal Law Firm and Respondent's Washington office to ascertain the status of her case, but could not reach Respondent.

101. In the summer of 2012, Mr. Tolbert advised Ms. Miljkovic that he was no longer associated with Respondent, but that Respondent would continue to represent her.

102. When Ms. Miljkovic subsequently contacted Respondent in the summer of 2012, Respondent refused to handle her case.

103. Respondent and the Cardinal Law Firm did not provide any legal services to Ms. Miljkovic.

104. Ms. Miljkovic has not received a refund of any portion of her fee paid to the Cardinal Law Firm and A. Barton Law Firm.

With respect to the complaint of Ms. Gray-Knight, Judge Bernard found:

19

105. Christine A. Gray-Knight (hereinafter referred to as "Ms. Gray-Knight") retained the Cardinal Law Firm in early 2011 to represent her in connection with a bankruptcy matter.

106. Ms. Gray-Knight initially met with Mr. Tolbert on April 14, 2011.

107. At the April 14, 2011 meeting, Mr. Tolbert accepted Ms. Gray-Knight's case on behalf of the Cardinal Law Firm, and advised her that the firm's fee would be $2,000.00 plus a filing fee of $299.00.

108. At the April 14, 2011 meeting, Mr. Tolbert advised Ms. Gray-Knight to file a Chapter 7 bankruptcy petition.

109. On April 14, 2011, Ms. Gray-Knight gave Mr. Tolbert a check in the amount of $500.00, payable to the A. Barton Law Firm.

110. The funds paid by Ms. Gray-Knight to the Cardinal Law Firm were not deposited in an escrow account.

111. Mr. Tolbert explained to Ms. Gray-Knight that the Cardinal Law Firm would not begin work on her bankruptcy petition until the fee was paid in full.

112. Mr. Tolbert informed Ms. Gray-Knight that Respondent would contact her about preparation of the bankruptcy petition.

113. In May 2011, the Cardinal Law Firm sent a notice to Ms. Gray-Knight, reminding her that a balance of $1,799.00 was owed to the firm and that she should make her check payable to the A. Barton Law Firm.

114. In July 2011, the Cardinal Law Firm sent a notice to Ms. Gray-Knight, confirming that the firm was retained to represent her in a bankruptcy case.

115. On August 11, 2011, the Cardinal Law Firm sent another notice to Ms. Gray-Knight, reminding her that her bankruptcy petition would not be filed until the balance due was paid.

116. Ms. Gray-Knight attempted to contact Respondent on several occasions, without receiving a reply.

117. Ms. Gray-Knight subsequently spoke to Mr. Tolbert, who promised that Respondent would call her.

20

118. Ms. Gray-Knight did not receive a call from Respondent after speaking to Mr. Tolbert.

119. Ms. Gray-Knight subsequently discharged the Cardinal Law Firm and demanded a return of the unearned fee.

120. The Cardinal Law Firm provided Ms. Gray-Knight with no legal services.

121. Ms. Gray-Knight made several attempts to contact Respondent to request a refund of her retainer.

122. Ms. Gray-Knight has not received a refund of any portion of her retainer.

Judge Bernard then proceeded to her Conclusions of Law:

> In the proceedings before the Court, the Petitioner has the burden of proving the allegations by clear and convincing evidence. The Respondent has the burden of proving a matter of affirmative defense or mitigation by a preponderance of the evidence. In each matter, Petitioner charged Respondent with a violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15, 1.16, 5.3, 5.5, and 8.4 of the Maryland Lawyers' Rules of Professional Conduct (hereinafter "MLRPC").
>
> The Court finds by clear and convincing evidence that the Respondent violated Rule 1.1 by failing to respond to clients' repeated requests for information, failing to attend hearings on behalf of clients, failing to file bankruptcy petitions, and failing to properly further the objectives of her clients. In *Attorney Grievance Commission v. Ficker,* 349 Md. 13, 42, 706 A.2d 1045, 1059 (1998), the Court of Appeals stated: "[T]he lawyer does have a duty to his or her client to remain diligent". The evidence in this case clearly demonstrated that the Respondent abdicated her responsibility to supervise Mr. Tolbert and the other Maryland office employees, and provided inadequate representation to her clients despite taking a fee in each case. "Compliance with [Rule 1.1] requires more than knowing what to do. It requires applying the knowledge to the client's problem." *Attorney Grievance Commission v. McCulloch,* 404 Md. 388, 397-98, 946 A.2d 1009, 1015 (2008). The Court of Appeals has said "[e]vidence of a failure to apply the requisite thoroughness and/or preparation in representing a client is sufficient alone to support a violation of Rule 1.1." *Attorney Grievance Commission v. Guida,* 391 Md. 33, 54,

891 A.2d 1085, 1097 (2006). Such acts also demonstrate a lack of "diligence and promptness" in violation of Rule 1.3. *McCulloch*, 404 Md. at 398, 946 A.2d at 1015. ("The evidence shows that respondent failed to act with 'diligence and promptness' as required by Rule 1.3, for the same reasons discussed under Rules 1.1 and 1.2."). As in *McCulloch* and *Guida*, Respondent took a fee in each case but failed to do any cognizable work of value to the client. Therefore, Respondent, in each complaint, violated Rules 1.1, 1.3, and 8.4(a) and (d) of the MLRPC. *See Attorney Grievance Commission v. Nelson*, 425 Md. 344, 363, 40 A.3d 1039, 1050 (2012). The Respondent through her persistent conduct clearly violated Rule 8.4(d), which states that it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice." Rule 8.4(a) was also violated when Respondent breached the other Rules of Professional Conduct.

Respondent is also charged in each complaint with a violation of Rule 1.4(a) and (b) of the MLRPC. Each and every witness testified to having difficulties contacting Respondent, and in some cases, being unable to contact Respondent entirely. In Ms. Simmons' case, Respondent failed to adequately communicate with both Ms. Simmons and her creditors. Respondent did not keep her clients informed regarding the status of their case or respond to their attempts to communicate with her. Moreover, to the extent that Respondent had difficulties with her personal health of which she testified, or with Mr. Tolbert and the Cardinal Law Firm, Respondent failed to inform her clients of these problems and any others that limited her ability to represent them. Thus, in each matter, Respondent violated Rule 1.4(a) and (b).

Respondent violated Rules 5.3(a), (b) and (c) by failing to properly supervise Mr. Tolbert and the rest of the Cardinal Law Firm. It is undisputed that Mr. Tolbert met with clients, quoted fees, provided legal advice to clients, and held himself out as an attorney. Mr. Tolbert was able to do so because Respondent was not in the office to supervise him and had not made any efforts to ensure that his conduct was compatible with Respondent's professional obligations. Mr. Tolbert also mishandled law firm and client funds, and deposited unearned funds into a business account, not an escrow account. Respondent was not only aware of this conduct; Respondent permitted this conduct and instructed both Mr. Tolbert and Ms. Crawford[17] so that the law office could effectively function without Respondent's presence. More troubling perhaps is Respondent's admission that she provided blank checks to Mr. Tolbert after she learned that he had stolen client money from the firm. In fact, Respondent gave Mr.

---

[17] Karen Crawford was Respondent's paralegal at the Camp Springs office of the Cardinal Law Firm.

Tolbert total control of the firm bank accounts. Respondent testified that she did not review the bank statements, even after she had caught him stealing. Such conduct can only be seen as enabling and ratification of the misconduct. Despite Respondent's testimony that she knew Mr. Tolbert "did not listen" she continued to condone his conduct. The Court did not find the Respondent to be at all credible in her denial of Mr. Tolbert's actions. She repeatedly testified that she knew that Mr. Tolbert "did not listen," but did not take any affirmative action to deter or stop his behavior. In fact she testified that she continued to pay Mr. Tolbert up until July, 2011.

Respondent knowingly permitted Mr. Tolbert to handle client intake, which included quoting fees (based upon an evaluation of the prospective client's case) and providing legal advice, and therefore, assisted Mr. Tolbert in engaging in the unauthorized practice of law in violation of Rules 5.5(a) and 8.4(d).

Respondent violated Rule 1.16(d) in the Winston, Miljkovic, Gray-Knight, Tyner, Barnes and Bar Counsel complaints for failing to return unearned fees paid to Respondent by each client. The fees charged to those clients, while the respective fee may not have been unreasonable on its face, became unreasonable because Respondent did no work of value, or at all, in their case, in violation of Rule 1.5(a). *See Guida*, 391 Md. at 54, 891 A.2d at 1096-97.

Respondent's failure to disclose the receipt of an additional $526.00 payment from Winston to the U.S. Bankruptcy Court is a violation of Rule 8.4(c).

Respondent's failure to maintain unearned fees of Cardinal Law Firm clients in an attorney trust account, and instead maintaining those fees in the A. Barton Law Firm checking account along with firm funds used to pay expenses and employees, without written informed consent of the clients violated Rule 1.15(a) and (b).

Lastly, Petitioner alleged in its Petition for Disciplinary or Remedial Action that Respondent shared fees from cases with Mr. Tolbert in violation of Rule 5.4, which Respondent vehemently denied at trial. Notwithstanding that denial, this Court again finds Respondent's testimony not credible. The evidence submitted at trial, coupled with Respondent's testimony, demonstrated that Respondent paid Mr. Tolbert $1,000.00 every two (2) weeks. On cross-examination, Respondent stated that Mr. Tolbert did not receive any additional salary on top of the $1,000.00 and that in 2011 Respondent was only paid for six months, until the end of June, 2011. Yet according to Mr. Tolbert's 1099 for 2011, submitted into evidence during Respondent's case, Respondent paid Mr. Tolbert $48,000.00 in 2011. Even if Respondent paid Mr. Tolbert for the entire 2011 year,

Respondent would have only earned $26,000.00. Since Respondent testified that Mr. Tolbert was not paid any additional money, the only logical conclusion is that Respondent shared fees with Mr. Tolbert.

Judge Bernard also concluded as to the mitigating factors:

Having determined that Respondent violated the various previously referenced Rules, the Court turns now to the mitigation evidence presented by Respondent. The Court determines by a preponderance of the evidence, pursuant to Maryland Rule 16-757(b) that the following factor mitigates the misconduct charged in this case. Respondent testified that she took over 50 cases pro bono, filing them in Maryland. She indicated that she had to take on a second job, in addition to the document reviews that she was doing, in order to pay the filing fees and other associated costs. She testified that she spoke with creditors, mortgage companies, etc. in order to try to protect the interests of the clients that she was handling on a pro bono basis.

The Court did not find that Respondent's illness in any way would mitigate the previously referenced violations.

"This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance v. O'Leary*, 433 Md. 2, 28, 69 A.3d 1121, 1136 (2013), quoting *Attorney Grievance v. Chapman*, 430 Md. 238, 273, 60 A.3d 25, 46 (2013). We conduct an independent review of the record and we accept the hearing judge's findings of fact unless shown to be clearly erroneous. *Attorney Grievance v. Lara*, 418 Md. 355, 14 A.3d 650 (2011). "Under our independent review of the record, we must determine whether the findings of the hearing judge are based on clear and convincing evidence." *Attorney Grievance v. Mooney*, 359 Md. 56, 73, 753 A.2d 17, 26 (2000). With respect to exceptions, upon our review of the record, "the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous." Maryland Rule 16-759(b)(2); *Attorney Grievance v. Whitehead*, 405 Md. 240, 253, 950 A.2d 798, 806 (2008). "A hearing judge's factual finding is not clearly erroneous if there is any

24

competent material evidence to support it." *Attorney Grievance v. McDonald*, 437 Md. 1, 16, 85 A.3d 117, 125 (2014) (internal quotation omitted). As to the hearing judge's conclusions of law, such as whether provisions of the MLRPC were violated, our consideration is essentially *de novo*. Maryland Rule 16-759(b)(1). Finally, as to the hearing judge's mitigation findings, Maryland Rule 16-757(b) provides that "A respondent who asserts…a matter of mitigation…has the burden of proving the…matter by a preponderance of the evidence."

Bar Counsel did not file any exceptions to Judge Bernard's findings of fact and conclusions of law and recommends disbarment. Respondent has filed multiple exceptions in which she challenges various findings of fact, numerous conclusions of law and Judge Bernard's mitigation findings; at argument Barton's counsel suggested a reprimand, or at worst, a suspension for 90 to 120 days as a sanction.

Respondent initially challenges the use of the deemed admissions to establish the violations of the Rules alleged. She argues that the deemed admissions should not have been relied upon by the hearing judge as bases for the findings of fact and conclusions of law and that Bar Counsel was not prejudiced by her failure to answer within 30 days, because she eventually did answer the request for admissions, albeit on the eve of the hearing.

We recognize that the hearing judge, generally, "is entrusted with the role of administering the discovery rules and, as such, is vested with broad discretion in imposing sanctions when a party fails to comply with the rules." *Attorney Grievance v.*

*O'Leary*, 433 Md. at 28-29, 69 A.3d at 1137, quoting *Attorney Grievance v. Kreamer*, 404 Md. 282, 342, 946 A.2d 500, 535 (2008). With respect to the sanctions for failing to respond to the requests for admissions, Maryland Rule 2-424(b)[18] provides that any matter for which an admission is requested is deemed admitted if a party fails to respond to the request within 30 days. Maryland Rule 2-424(d)[19] provides that deemed admissions

---

[18] Maryland Rule 2-424(b) provides:

(b) **Response**. Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed serves a response signed by the party or the party's attorney. As to each matter of which an admission is requested, the response shall set forth each request for admission and shall specify an objection, or shall admit or deny the matter, or shall set forth in detail the reason why the respondent cannot truthfully admit or deny it. The reasons for any objection shall be stated. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and deny or qualify the remainder. A respondent may not give lack of information or knowledge as a reason for failure to admit or deny unless the respondent states that after reasonable inquiry the information known or readily obtainable by the respondent is insufficient to enable the respondent to admit or deny. A party who considers that a matter of which an admission is requested presents a genuine issue for trial may not, on that ground alone, object to the request but the party may, subject to the provisions of section (e) of this Rule, deny the matter or set forth reasons for not being able to admit or deny it.

[19] Maryland Rule 2-424(d) provides:

(d) **Effect of admission**. Any matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment. The court may permit withdrawal or amendment if the court finds that it would assist the presentation of the merits of the action and the party who obtained the admission fails to satisfy the court that withdrawal

(continued…)

26

are conclusively established, unless the court permits their withdrawal or amendment, which the court may do if it will assist in the presentation of the merits of the action and if the party who obtained the admissions fails to satisfy the court that it will be prejudiced by the withdrawal or amendment of the admissions.

Judge Bernard was within her discretion in deeming each Request for Admission admitted and not permitting their withdrawal on the eve of the hearing, as she rejected as inadequate the proffer by Barton's counsel that, prior to the hearing, Barton was unavailable to him and that he was in another trial.

Respondent also appears to take broad exception to the hearing judge's credibility findings. In developing her factual findings, Judge Bernard discredited much of Respondent's testimony regarding the authority that she gave Mr. Tolbert in managing the Cardinal Law Firm in Camp Springs, as well as his access to the firm's bank accounts and Barton's recollection of specific interactions she had with clients.

We, generally, "defer to the credibility findings of the hearing judge." *Attorney Grievance v. Agbaje*, 438 Md. 695, 722, 93 A.3d 262, 277 (2014). "The hearing judge is in the best position to evaluate the credibility of the witnesses and to decide which one to believe and, as we have said, to pick and choose which evidence to rely upon." *Attorney Grievance v. Monfried*, 368 Md. 373, 390, 794 A.2d 92, 101 (2002); *see also Attorney*

---

(…continued)

or amendment will prejudice that party in maintaining the action or defense on the merits. Any admission made by a party under this Rule is for the purpose of the pending action only and is not an admission for any other purpose, nor may it be used against that party in any other proceeding.

27

*Grievance v. Sheridan*, 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999) (stating that the hearing judge is "in the best position to assess first hand a witness's credibility."). As we have stated, a hearing judge is "free to disregard the testimony of respondent if the judge believed the evidence was not credible." *Monfried*, 368 Md. at 390, 794 A.2d at 101.

Respondent excepts to Judge Bernard's finding that "Respondent permitted Mr. Tolbert to meet with prospective clients, to accept cases and set fees, and was aware that Mr. Tolbert was doing so on behalf of the Cardinal Law Firm", based on her own testimony during the hearing that she did not leave Mr. Tolbert in charge of the firm and he did not have the authority to accept clients, give legal advice, charge client fees or negotiate checks because he was not a lawyer; he was only to take the names and contact information of potential clients. Respondent also testified that she had no supervisory authority over Mr. Tolbert after March, 2011, because she had closed the firm.

The hearing judge specifically stated that Respondent's testimony in regard to her supervision of and authority over Mr. Tolbert was incredible. In a letter from Barton to Mr. Tolbert, which was admitted into evidence as Exhibit R, Barton writes, "we entered into an arrangement around September/October of last year 2010, where you would work for me as an accountant, office manager, book[k]eeper, and sometimes intake person, you collected the money for the firm", and that, "I gave you the Maryland rules to read and told you what the legal fees for bankruptcy cases in Maryland were supposed to be". Respondent also testified that she had told Mr. Tolbert about fee structures in bankruptcy cases, after Mr. Tolbert suggested that the firm charge higher fees. In terms of the amount

28

of time during which Mr. Tolbert was employed, Judge Bernard had before her Exhibit 11 – federal Form 1099, which was accepted into evidence at the hearing and, paired with Barton's testimony, shows that Mr. Tolbert was paid by the Cardinal Law Firm up until July of 2011. Thus, we overrule this exception.

Barton also excepts to the hearing judge's findings that, "Respondent permitted Mr. Tolbert to deposit funds in her 'A. Barton Law Firm' operating account", and, "Respondent was aware that Mr. Tolbert deposited client retainers in the 'A. Barton Law Firm' operating account", based upon her own testimony that client funds were not supposed to be deposited in the A. Barton Law Firm operating account and that Mr. Tolbert was not authorized to deposit any client funds into that account. Barton, however, during the hearing, testified with reference to the operating account, that "[Mr. Tolbert] could only deposit." Further, Barton testified at a November 30, 2011 hearing before the Bankruptcy Trustee, that, "clients were told to pay A. Barton Law Firm because that was the name on the IOLTA and business bank accounts"; she further testified that Mr. Tolbert "was in total control of the [IOLTA and business] bank accounts", according to the Trustee Memo, admitted into evidence as Exhibit B. We overrule this exception.

Respondent also excepts to the hearing judge's finding that:

> Respondent gave Mr. Tolbert a limited number of checks to disburse funds from the "A. Barton Law Firm" operating account to pay office expenses. Notably Respondent testified during trial that she continued to provide "blank" checks to Mr. Tolbert for several months after she had learned that Mr. Tolbert had stolen money from the firm.

Barton initially testified during the hearing that she gave Mr. Tolbert no authority to write checks, but later testified that he was given checks from the A. Barton Law Firm business account to pay firm expenses. She further testified that she provided Mr. Tolbert with pre-signed blank checks for the A. Barton Law Firm business account, even after she caught him stealing money from the firm in February 2011. We overrule this exception.

Barton also excepts to the hearing judge's finding that:

> In February 2012, the United States Bankruptcy Court for the District of Maryland ordered Respondent to refund $3,776.00 to Ms. Winston within 60 days. The Bankruptcy Court ordered the refund because it found that Respondent improperly failed to appear at the May 24, 2011 hearing, had been unresponsive to Ms. Winston's inquiries, failed to file an amended plan, and gave her inaccurate advice.

Respondent excepts based on her testimony that she "substantially completed" the work in Ms. Winston's case; that she would have completed Ms. Winston's bankruptcy were it not for her illness and that Ms. Winston's bankruptcy was eventually approved by the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court"). The Bankruptcy Court Order undergirding Judge Bernard's finding, however, had been admitted into evidence as Exhibit C and recited, verbatim, what Judge Bernard stated. Ms. Winston's testimony before the Bankruptcy Court, and also during the disciplinary hearing, reflects that Barton was unprepared during the bankruptcy hearing, as well as that Barton failed to appear at another hearing. Ostensibly, Barton seemingly credits the eventual approval of Ms. Winston's bankruptcy petition as obviating the finding, despite the fact that it was Ms. Winston who represented herself ultimately and successfully in the Bankruptcy Court. We, as a result, overrule this exception.

30

Respondent also excepts to Judge Bernard's finding that, "Respondent failed to file required papers on behalf of Ms. Simmons, resulting in the Bankruptcy Court issuing a deficiency notice." Barton argues that although Simmons did receive a "routine" deficiency notice, "it was corrected" and the case proceeded to confirmation. Respondent again, thus, argues no harm, no foul; in reality, however, her client snatched victory from the jaws of defeat because Ms. Simmons acted to correct the problem. We, therefore, overrule this exception.

Barton excepts to Judge Bernard's finding that:

> Ms. Rhett sent a message by electronic mail to Respondent on April 13, 2011, asking her questions about the status of her bankruptcy case…. Respondent replied to her e-mail message on May 2, 2011, responding to her questions…. In her May 2, 2011 reply to Ms. Rhett, Respondent did not indicate that she was no longer connected with the Cardinal Law Firm or Mr. Tolbert.

Respondent testified during the hearing that she was unaware that Ms. Rhett was a client and that she never authorized Mr. Tolbert to take any legal fees from Ms. Rhett.

The emails upon which Judge Bernard relied, however, were admitted into evidence at the hearing, as Exhibit I. Exhibit I reflects that, in her email of April 13, 2011, Ms. Rhett wrote that she had retained Barton's law firm and asked Barton numerous questions pertaining to her representation, including when her bankruptcy paperwork would be filed and what she should expect from Barton as her attorney. In Barton's reply, also contained in Exhibit I, three weeks later, Barton confirmed that her firm was representing Ms. Rhett, stated that she would file Ms. Rhett's bankruptcy paperwork as soon as possible, and assured Ms. Rhett that she would answer any

31

questions by phone, email or in person. At no point in her May 2, 2011 reply did Barton state that the Cardinal Law Firm was shuttered, despite Barton's testimony that she closed the firm after March 1, 2011; rather, Respondent confirmed her representation of Ms. Rhett, offered that the firm's paralegals would be working with Ms. Rhett, and described what Ms. Rhett should expect during the bankruptcy process. We, therefore, overrule this exception.

Respondent also makes several specific exceptions to Judge Bernard's findings concerning the allegations of individual complainants, specifically the allegations of Ms. Winston, Ms. Simmons, Ms. Rhett and Ms. Barnes.

Respondent excepts to the hearing judge's findings that, "Ms. Winston paid the Cardinal Law Firm a flat fee of $4,000.00, which Respondent disclosed on a Disclosure of Compensation filed in the Bankruptcy Court." Barton argues that she did not accept payment of Ms. Winston's $4,000.00 fee.

The issue is not, however, whether Barton had accepted payment, but whether the Cardinal Law Firm had. In making the findings, Judge Bernard relied on the deemed admissions as well as the Trustee Memo, which reflected that Barton affirmed, under the penalty of perjury, in a Disclosure of Compensation form required by the Bankruptcy Court, that Ms. Winston had paid Barton $4,000.00. We, therefore, conclude that Judge Bernard's findings were supported by clear and convincing evidence and overrule this exception.

Respondent next excepts to the hearing judge's findings that:

After the hearing on April 21, 2011, Ms. Winston discussed her case with Respondent and told her that she wanted to sell her condominium and to have the second mortgage removed. Respondent told Ms. Winston to contact Mr. Tolbert to discuss the issues regarding sale of the condominium and removal of the second mortgage. Upon contacting Mr. Tolbert, Ms. Winston was told that an additional fee would be required, which Ms. Winston paid by a check payable to the A. Barton Law Firm.

* * *

Ms. Winston later paid the Cardinal Law Firm an additional fee payment of $526.00, but Respondent did not disclose Ms. Winston's $526.00 payment to the Bankruptcy Court.

Respondent excepts, stating that she did not mention "an additional five hundred dollar[]" fee to Ms. Winston after the April 21, 2011 bankruptcy hearing. The challenged findings, however, do not rest on whether Barton mentioned an amount to Ms. Winston, but whether the $526.00 was paid and not disclosed. Judge Bernard relied upon the deemed admissions that mirrored her finding, as well as Ms. Winston's testimony that Barton knew that Ms. Winston wanted to remove the second mortgage and directed her to Mr. Tolbert, who charged her the additional $526.00. We overrule this exception.

Respondent excepts to Judge Bernard's finding that, "Ms. Barnes paid the Cardinal Law Firm a fee of $4,474.00 by a check payable to the A. Barton Law Firm." Respondent excepts that Ms. Barnes made payments to the Barton Law Firm and not the Cardinal Law Firm. Judge Bernard relied on the deemed admissions in making her finding, and, accordingly, we overrule this exception.

Barton also seems to argue that she did not accept Ms. Simmons's payments of $700.00 and $2,300.00, Mr. Tolbert did. Judge Bernard relied on the deemed admissions in making her findings, as well as Ms. Simmons's testimony that she initially made

33

payments to the Cardinal Law Firm by checks payable to the A. Barton Law Firm in the amounts of $700.00 and $2,300.00, and that she later was instructed by Mr. Tolbert that she needed to pay an additional $1,774.00 to convert her Chapter 7 bankruptcy to a Chapter 13, which she paid. Ms. Simmons's bank statements, additionally, were accepted into evidence as Exhibit L, which showed withdrawals totaling $4,774.00, confirming Ms. Simmons's testimony. Judge Bernard's findings, thus, were supported by clear and convincing evidence, and we overrule this exception.

Barton also excepts to Judge Bernard's finding that, "Ms. Simmons attempted to contact Respondent about the status of her case, but was unable to reach her." Barton argues that despite a delay, she eventually responded to Ms. Simmons and that Ms. Simmons was ultimately satisfied with their communication, relying on a letter, accepted into evidence at the hearing as Exhibit N, in which Ms. Simmons informed the Attorney Grievance Commission that despite a prior "misunderstanding" she was now "satisfied" with her communication with Barton. Judge Bernard relied upon the deemed admissions in making her findings. Ms. Simmons also testified at the hearing that she attempted to contact Barton and that Barton did not respond. Judge Bernard's finding was based on clear and convincing evidence and we, accordingly, overrule this exception.

Respondent also excepts to the hearing judge's finding that, "On May 11, 2011 the Cardinal Law Firm responded in writing to Ms. Rhett, agreeing to refund the full amount paid." Respondent argues that she did not respond to Ms. Rhett and that she never reimbursed Ms. Rhett. Judge Bernard again relied on the deemed admissions. Ms. Rhett,

34

additionally, testified at the hearing that Respondent stated, during a telephone conversation, that she would authorize Mr. Tolbert to refund the legal fees, and that Ms. Rhett could retrieve a check from the firm's office. Rhett further testified that Mr. Tolbert personally delivered her refund along with a gift basket, as well as also provided Ms. Rhett with a receipt, admitted as Exhibit H at the hearing, printed on Cardinal Law Firm letterhead in which Barton's name was featured. Again, there was clear and convincing evidence to support Judge Bernard's finding, and we, therefore, overrule this exception.

Respondent finally excepts to the hearing judge's failure to find facts which she offered in her post-hearing Proposed Findings of Fact, to include that Mr. Tolbert was never a signer on Respondent's bank accounts; Respondent had to continue working with Mr. Tolbert after February 2011, despite being aware that he had stolen from the firm, because he owned the office building in which the firm rented space and she had approximately 20 active clients remaining; Mr. Tolbert reacted angrily when learning Barton was closing the law firm; Mr. Tolbert accepted over 50 clients after March 2011 and stole their money plus their filing fees; Mr. Tolbert embezzled from the firm by somehow using checks that Barton had provided him; Tolbert was criminally charged with impersonating a lawyer and theft; Barton has not been criminally charged with regard to Mr. Tolbert's thefts; Barton, as the only attorney in the office who was barred in Maryland, had to attend court hearings and could not be in the office at all times; Barton only practiced law in jurisdictions in which she was authorized; Respondent's

35

communication with her clients was "adequate[]"; and all the clients's bankruptcy petitions were eventually approved by the Bankruptcy Court.

A hearing judge, however, is not required to accept any proposed findings submitted by Bar Counsel or a Respondent:

> A judge hearing an attorney grievance matter does not need to meld together his or her own opinion, taking bits and pieces of each party's proposed findings of facts and conclusions of law, but may adopt one party's filing in its entirety, as long as it accurately reflects the judge's independent factual findings, proven by clear and convincing evidence at the hearing, and the legal conclusions flowing therefrom.

*Attorney Grievance v. Joseph*, 422 Md. 670, 696, 31 A.3d 137, 153 (2011). Judge Bernard made her own findings, which were established by clear and convincing evidence, based upon the deemed admissions and her evaluation of what she heard and saw during two days of evidentiary hearings.

Having overruled all Respondent's exceptions to the hearing judge's findings of fact and having determined that the findings are supported by clear and convincing evidence, we now turn to the hearing judge's conclusions of law.

The hearing judge determined that Rules 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (b), 1.16(d), 5.3(a), (b) and (c), 5.4(a) and (b), 5.5(a), and 8.4(a), (c) and (d) were violated. Bar Counsel has filed no exceptions.

Although Barton excepted to the determinations that she violated Rules 1.1 and 1.3, at oral argument, her counsel conceded the violation of those Rules and we agree that those violations are supported by clear and convincing evidence.

36

Respondent generally excepts to a lack of evidentiary foundation for the violations of Rules 1.5(a), 1.15(a) and (b), and 5.4(a) and (b), and takes the same exception, as well as other specific exceptions to the determinations that she violated Rules 1.4(a) and (b), 1.16(d), 5.3(a), (b) and (c), 5.5(a), and 8.4(a), (c) and (d).

Respondent excepts to the hearing judge's conclusion that she violated Rules 1.4(a) and (b). Judge Bernard concluded:

> Respondent is also charged in each complaint with a violation of Rule 1.4(a) and (b) of the MLRPC. Each and every witness testified to having difficulties contacting Respondent, and in some cases, being unable to contact Respondent entirely. In Ms. Simmons' case, Respondent failed to adequately communicate with both Ms. Simmons and her creditors. Respondent did not keep her clients informed regarding the status of their case or respond to their attempts to communicate with her. Moreover, to the extent that Respondent had difficulties with her personal health of which she testified, or with Mr. Tolbert and the Cardinal Law Firm, Respondent failed to inform her clients of these problems and any others that limited her ability to represent them. Thus, in each matter, Respondent violated Rule 1.4(a) and (b).

Respondent argues there is no evidence of any Rule 1.4 violations.

Rules 1.4(a) and (b) provide that, a lawyer shall "keep the client reasonably informed about the status of the matter", and that a "lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Rule 1.4(a) requires an attorney to keep a client reasonably informed about the status of his or her case. *Attorney Grievance v. Gelb*, Misc. Docket AG No. 36, Sept. Term, 2013, slip op. at 9 (Oct. 22, 2014) (attorney violated 1.4(a) by failing to return a client's telephone calls or respond to another client's requests for information). Rule 1.4(b) requires that an attorney explain matters to the extent necessary to allow the

client to make informed decisions. *Gelb*, slip op. at 9 (attorney's failure to communicate violated 1.4(b) when his clients's cases were dismissed due to lack of prosecution without the clients's knowledge or consent); *Attorney Grievance v. Narasimhan*, 438 Md. 638, 92 A.3d 512 (2014) (attorney violated 1.4(b) by failing to provide her client with accurate information that was necessary for her client to make informed decisions).

Here, the hearing judge found that Barton failed to return the phone calls of Ms. Winston and failed to keep both Ms. Tyner and Ms. Simmons informed about the status of their respective cases in violation of Rule 1.4(a). Barton's lack of communication with Ms. Simmons and the inaccurate advice she gave to Ms. Winston also violated Rule 1.4(b). Ms. Simmons testified at the disciplinary hearing that she was unable to contact Barton after the Bankruptcy Court issued a deficiency notice in her case, due to Barton's failure to file the required papers, and Ms. Simmons eventually had to act on her own to correct the problem. The hearing judge also found that Respondent gave Ms. Winston inaccurate advice concerning the sale of her condominium, advice concerning a course of action which the Bankruptcy Court opined was totally unnecessary. We overrule Respondent's exception and conclude that Barton violated Rules 1.4(a) and (b).

Respondent excepts to Judge Bernard's conclusion that:

The fees charged [in the Winston, Miljkovic, Gray-Knight, Tyner, Barnes and Bar Counsel complaints], while the respective fee may not have been unreasonable on its face, became unreasonable because Respondent did no work of value, or at all, in their case, in violation of Rule 1.5(a).

Respondent asserts that there was no evidence in that she violated Rule 1.5(a).

Under Rule 1.5(a), an attorney may not charge an unreasonable fee. An advance fee given in anticipation of legal service that is reasonable at the time of the receipt can become unreasonable if the attorney does not perform the services expected. *Attorney Grievance v. Guida*, 391 Md. 33, 891 A.2d 1085 (2006) (a flat fee to facilitate an adoption became unreasonable, in violation of 1.5(a), when the attorney failed to do any work); *see also Attorney Grievance v. Shakir*, 427 Md. 197, 46 A.3d 1162 (2012) (attorney violated 1.5(a) when he accepted flat fees to file an asylum application and represent a client regarding DUI charges and then failed to perform either task). Here, the hearing judge found that Ms. Winston paid Respondent a flat fee which became unreasonable when Barton then failed to appear at a bankruptcy hearing, failed to respond to Ms. Winston's inquiries, failed to file an amended bankruptcy petition and subsequently gave Ms. Winston inaccurate advice. The hearing judge found that the Chapmans and the Johnsons each paid Respondent a flat fee which the Bankruptcy Court ordered Barton to refund because of Respondent's inadequate work product. The hearing judge, additionally, found that Respondent accepted fees from Ms. Barnes, Ms. Miljkovic and Ms. Gray-Knight, yet Barton "did no work" and provided "no legal services" of any kind. We overrule Respondent's exception and conclude that Barton violated Rule 1.5(a).

Respondent also excepts to the hearing judge's conclusion that she violated Rules 1.15(a) and (b). Judge Bernard concluded:

> Respondent's failure to maintain unearned fees of Cardinal Law Firm clients in an attorney trust account, and instead maintaining those fees in the A. Barton Law Firm checking account along with firm funds used to

pay expenses and employees, without written informed consent of the clients violated Rule 1.15(a) and (b).

Respondent asserts that there was no evidence that she violated Rules 1.15(a) and (b).

Rule 1.15(a) requires that an attorney deposit advance fees into an attorney trust account, and additionally, requires that an attorney keep records of the fees. We have noted:

> Funds given in anticipation of future legal services qualify as trust money and, accordingly, are to be deposited in trust accounts separate from the attorney's property, to be removed promptly by the attorney as earned. To deposit such trust money into the attorney's personal or operating accounts before the fees are earned constitutes a violation of MRPC 1.15(a).

*Attorney Grievance v. Webster*, 402 Md. 448, 463-64, 937 A.2d 161, 170 (2007), quoting *Guida*, 391 Md. at 53, 891 A.2d at 1097 (internal citations omitted); *see also Attorney Grievance v. Nussbaum*, 401 Md. 612, 934 A.2d 1 (2007) (commingling of personal funds and client funds violates Rule 1.15(a)). Here, the hearing judge found that Respondent permitted Mr. Tolbert to deposit client funds in her law firm's operating account, a practice about which Barton was aware.

Rule 1.15(b) states:

> (b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16-607 b.

Maryland Rule 16-607 provides in relevant part:

> a. **General prohibition**. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16-604 or permitted to be so deposited by section b. of this Rule.
>
> b. **Exceptions**. 1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum

balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16-610 b 1 (D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

Here, Judge Bernard found that Barton was aware and permitted Mr. Tolbert to deposit the funds and retainers received from the firm's clients into the A. Barton Law Firm operating account, which included earned fees and funds from which firm expenses were drawn, in violation of Rule 1.15(b).

Accordingly, we overrule Respondent's exception and conclude that Barton commingled funds in violation of Rules 1.15(a) and (b).

Respondent next excepts to the hearing judge's conclusion that she violated Rule 1.16(d). Judge Bernard concluded that, "Respondent violated Rule 1.16(d) in the Winston, Miljkovic, Gray-Knight, Tyner, Barnes and Bar Counsel complaints for failing to return unearned fees paid to Respondent by each client." Barton argues that there was no evidentiary foundation for the Rule 1.16(d) violation.

Rule 1.16(d) states that a lawyer shall refund to the client "any advance payment of fee or expense that has not been earned or incurred." *See Attorney Grievance v. Pinno*, 437 Md. 70, 85 A.3d 159 (2014) (attorney violated 1.16(d) by abandoning a client's case before it was completed and by failing to return the unearned fees); *Attorney Grievance v. McLaughlin*, 372 Md. 467, 813 A.2d 1145 (2002) (attorney violated 1.16(d) by not refunding unearned fees to his clients after performing no legal work). Judge Bernard

found that: Respondent failed to refund the fees paid to her by Ms. Winston and Ms. Gray-Knight after both clients discharged Barton as their counsel; Respondent, additionally, did not refund the fees paid to her by Ms. Winston, the Chapmans or the Johnsons, despite being ordered to do so by the Bankruptcy Court; Respondent, furthermore, did not refund the fees paid to her by Ms. Barnes, Ms. Miljkovic or Ms. Gray-Knight after Barton claimed to have no knowledge of those clients's cases. We overrule Barton's exception and conclude that she violated Rule 1.16(d).

Respondent also excepts to the hearing judge's conclusion that she violated Rules 5.3(a), (b) and (c). Judge Bernard concluded:

> Respondent violated Rules 5.3(a), (b) and (c) by failing to properly supervise Mr. Tolbert and the rest of the Cardinal Law Firm. It is undisputed that Mr. Tolbert met with clients, quoted fees, provided legal advice to clients, and held himself out as an attorney. Mr. Tolbert was able to do so because Respondent was not in the office to supervise him and had not made any efforts to ensure that his conduct was compatible with Respondent's professional obligations. Mr. Tolbert also mishandled law firm and client funds, and deposited unearned funds into a business account, not an escrow account. Respondent was not only aware of this conduct; Respondent permitted this conduct and instructed both Mr. Tolbert and Ms. Crawford so that the law office could effectively function without Respondent's presence. More troubling perhaps is Respondent's admission that she provided blank checks to Mr. Tolbert after she learned that he had stolen client money from the firm. In fact, Respondent gave Mr. Tolbert total control of the firm bank accounts. Respondent testified that she did not review the bank statements, even after she had caught him stealing. Such conduct can only be seen as enabling and ratification of the misconduct. Despite Respondent's testimony that she knew Mr. Tolbert "did not listen" she continued to condone his conduct. The Court did not find the Respondent to be at all credible in her denial of Mr. Tolbert's actions. She repeatedly testified that she knew that Mr. Tolbert "did not listen," but did not take any affirmative action to deter or stop his behavior. In fact she testified that she continued to pay Mr. Tolbert up until July, 2011.

Rules 5.3(a), (b) and (c), "Responsibilities Regarding Nonlawyer Assistants," provide:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:
>
> (a) a partner…in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
> (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer;
> (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Maryland Lawyers' Rules of Professional Conduct if engaged in by a lawyer if:
> (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
> (2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action;

Barton argues that she did not violate Rules 5.3(a), (b) and (c).

"An attorney may not escape responsibility to his clients by blithely saying that any shortcomings are solely the fault of his employee." *Mooney*, 359 Md. at 90, 753 A.2d at 35, quoting *Attorney Grievance Comm'n v. Goldberg*, 292 Md. 650, 655, 441 A.2d 338, 341 (1982). In *Attorney Grievance v. Zuckerman*, 386 Md. 341, 872 A.2d 693 (2005), an attorney delegated the task of balancing his trust account to a nonlawyer employee and then did not follow up to ensure that the delegated task was actually and competently performed; the employee did not balance the trust account as requested. Zuckerman's failure to supervise delayed, for a month, his discovery that another

43

nonlawyer employee had embezzled funds from his trust account. Zuckerman's conduct violated Rules 5.3(a) and (b). "'[H]ad the respondent exercised a reasonable degree of supervision over [his employee], he might have detected [the employee's] error before any ethical proscriptions had been violated' under Rule 5.3." *Id*. at 374, 872 A.2d at 713, quoting *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 481, 671 A.2d 463, 479 (1996). Rule 5.3(c) is violated when an attorney delegates a task to an employee, the unsuccessful or improper completion of which would result in a violation of the Rules. In *Attorney Grievance v. Ward*, 394 Md. 1, 904 A.2d 477 (2006), an attorney violated Rule 5.3(c) when he ordered his assistant to notarize a document without the signer present.

*Attorney Grievance v. Kimmel*, 405 Md. 647, 955 A.2d 269 (2008), although specifically addressing a violation of Rule 5.1 by two attorneys for failing to supervise an inexperienced associate, is helpful in understanding the duty to supervise. In *Kimmel*, Kimmel and Silverman were the managing partners of a Pennsylvania law firm which operated a high volume practice; neither attorney was a member of the Bar of this State. The firm hired Robin Katz, a Maryland-barred attorney, to establish a local office wherein Katz was responsible for litigation in Maryland. Kimmel and Silverman stressed that Katz meet "a weekly benchmark for complaints to be filed" and regularly "emphasized the importance of this objective." *Id*. at 656, 955 A.2d at 275.

Over the course of a year, Katz became increasingly overwhelmed and struggled to meet her performance benchmarks; she requested assistance on multiple occasions, but none was forthcoming. In one instance, she was reminded by the firm's office manager

44

about the need to file fifteen complaints per week; on another occasion, Katz's supervising attorney emailed, "no excuses, don't call, no need to talk, just get on it and only call me with good positive news of settlements". *Id.* at 657, 955 A.2d at 275. Katz eventually resigned after becoming "totally overwhelmed". *Id.* at 663, 955 A.2d at 279. Silverman, shortly thereinafter, visited Katz's office for the first time, observed "stacks of documents in [the] office that were not filed" and noted that Katz, who had yet to depart, looked "like a beaten dog." *Id.* We emphasized that, "numerous indicators alerted [Kimmel and Silverman] to the need for a heightened level of supervision, but [they] failed to design and implement policies and procedures that reasonably would ensure compliance with the Maryland Rules", *id.* at 680, 955 A.2d at 289, and opined that, "[w]hether an employee's ethical breaches are due to the employee's sub-standard performance or the deliberate circumvention of standard procedures, proper supervision must include mechanisms to determine whether the delegated tasks are being performed." *Id.* at 682, 955 A.2d at 290.

In the present case, Judge Bernard found that Barton was the owner and only Maryland-barred attorney in the Cardinal Law Firm at the relevant time, and that she employed Mr. Tolbert, who was not licensed to practice law, as her office manager. She also not only permitted, but encouraged, Mr. Tolbert to engage in the unlicensed practice of law by allowing him to give legal advice to clients of the Cardinal Law Firm. Barton, additionally, permitted Mr. Tolbert to deposit client funds in the firm's operating account and provided him with blank checks. After Barton became aware in February of 2011

that Mr. Tolbert was stealing from the account, she continued to employ him up until July of 2011. Accordingly, we overrule Respondent's exception and conclude that Barton violated Rules 5.3(a), (b) and (c).

Respondent also excepts to the hearing judge's conclusion that she violated Rules 5.4(a) and (b). Judge Bernard concluded:

> Lastly, Petitioner alleged in its Petition for Disciplinary or Remedial Action that Respondent shared fees from cases with Mr. Tolbert in violation of Rule 5.4, which Respondent vehemently denied at trial. Notwithstanding that denial, this Court again finds Respondent's testimony not credible. The evidence submitted at trial, coupled with Respondent's testimony, demonstrated that Respondent paid Mr. Tolbert $1,000.00 every two (2) weeks. On cross-examination, Respondent stated that Mr. Tolbert did not receive any additional salary on top of the $1,000.00 and that in 2011 Respondent was only paid for six months, until the end of June, 2011. Yet according to Mr. Tolbert's 1099 for 2011, submitted into evidence during Respondent's case, Respondent paid Mr. Tolbert $48,000.00 in 2011. Even if Respondent paid Mr. Tolbert for the entire 2011 year, Respondent would have only earned $26,000.00. Since Respondent testified that Mr. Tolbert was not paid any additional money, the only logical conclusion is that Respondent shared fees with Mr. Tolbert.

Respondent alleges that there is no evidence of her violation of Rules 5.4(a) and (b).

Rules 5.4(a) and (b) provide that a "lawyer…shall not share legal fees with a nonlawyer" and that a "lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law."

There is insufficient evidence presented in the record to support the hearing judge's determination that Barton shared legal fees with Mr. Tolbert. We, thus, sustain Respondent's exception to the conclusion that she violated Rule 5.4(a).

46

Judge Bernard also found that Barton was aware that Mr. Tolbert gave legal advice to clients; Respondent also directed Ms. Winston to Mr. Tolbert when Ms. Winston raised a legal question regarding her condominium. Clearly, Barton treated Mr. Tolbert as a principal in the law firm and thereby violated Rule 5.4(b). We, thus, overrule her exception to Rule 5.4(b).

Respondent excepts to the hearing judge's conclusion that she violated Rule 5.5(a). Judge Bernard concluded:

> Respondent knowingly permitted Mr. Tolbert to handle client intake, which included quoting fees (based upon an evaluation of the prospective client's case) and providing legal advice, and therefore, assisted Mr. Tolbert in engaging in the unauthorized practice of law in violation of Rules 5.5(a) and 8.4(d).

Respondent argues that there is no proof of her violation of Rule 5.5(a).

Rule 5.5(a) states that, "[a] lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." Rule 5.5(a) is violated when an attorney permits an employee to operate as a lawyer although not barred as one. *Attorney Grievance v. Brennan*, 350 Md. 489, 714 A.2d 157 (1998) (an attorney violated Rule 5.5 when he employed a suspended lawyer as a paralegal, yet the suspended lawyer provided legal advice to clients).

What constitutes the practice of law has been defined in Section 10-101(h) of the Business Occupations and Professions Article of the Maryland Code as:

> (h) *Practice law.* — (1) "Practice law" means to engage in any of the following activities:
> (i) giving legal advice;

(ii) representing another person before a unit of the State government or of a political subdivision; or

(iii) performing any other service that the Court of Appeals defines as practicing law.

(2) "Practice law" includes:

(i) advising in the administration of probate of estates of decedents in an orphans' court of the State;

(ii) preparing an instrument that affects title to real estate;

(iii) preparing or helping in the preparation of any form or document that is filed in a court or affects a case that is or may be filed in a court; or

(iv) giving advice about a case that is or may be filed in a court.

Md. Code Ann., Bus. Occ. & Prof. § 10-101(h) (1989, 2010 Repl. Vol, 2014 Supp.).

We have also opined that:

> To determine whether an individual has engaged in the practice of law, the focus of the inquiry should be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent. Where trial work is not involved but the preparation of legal documents, their interpretation, the giving of legal advice, or the application of legal principles to problems of any complexity, is involved, these activities are still the practice of law.

*Attorney Grievance v. Brooke*, 374 Md. 155, 176, 821 A.2d 414, 426 (2003) (internal quotations and citations omitted).

Here, Judge Bernard found that Mr. Tolbert, the office manager, led several clients to believe that he was an attorney, despite not being licensed to practice law. The hearing judge found, additionally, that Barton was aware that Mr. Tolbert gave legal advice to clients of the Cardinal Law Firm, including the Johnsons, Ms. Barnes, Ms. Simmons, Ms. Rhett and Ms. Gray-Knight, with regard to what type of bankruptcy petitions to file and advised Ms. Tyner, Ms. Simmons and Ms. Miljkovic to stop paying their respective

48

mortgages. We overrule Respondent's exception and, therefore, conclude that Barton violated Rule 5.5(a).

Respondent, additionally, excepts to the hearing judge's conclusion that she violated Rules 8.4(a), (c) and (d). Rule 8.4(c) states that it is professional misconduct for an attorney to engage in conduct that involves dishonesty, fraud, deceit or misrepresentation. With regard to Rule 8.4(c), Judge Bernard concluded that, "Respondent's failure to disclose the receipt of an additional $526.00 payment from Winston to the U.S. Bankruptcy Court is a violation of Rule 8.4(c)." Barton argues that there was no evidence adduced to support a violation of Rule 8.4(c).

An attorney who knowingly makes a false statement to a tribunal necessarily engages in misrepresentation in violation of Rule 8.4(c). *Attorney Grievance v. Dore*, 433 Md. 685, 73 A.3d 161 (2013). Section 329 of Title 11 of the United States Code ("Bankruptcy Code")[20] requires all attorneys who represent debtors to disclose the

---

[20] 11 U.S.C. § 329(a) provides, in relevant part:

**Debtor's transactions with attorneys**.

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(continued…)

amount of compensation they have received, or will receive, in a bankruptcy case; if the compensation exceeds the reasonable value of the legal services received, the Bankruptcy Court may order the return of that compensation to the debtor's estate. Attorneys, pursuant to Rule 2016(b) of the Federal Rules of Bankruptcy Procedure,[21] must supplement the initial disclosure whenever they receive any additional compensation from debtors "within 14 days after any payment or agreement not previously disclosed."

We have found a Rule 8.4(c) violation when a misrepresentation is overt or based upon a concealment of material facts. *Attorney Grievance v. Floyd*, 400 Md. 236, 929 A.2d 61 (2007). In *Attorney Grievance v. Robaton*, 411 Md. 415, 983 A.2d 467 (2009), an attorney made an intentional misrepresentation in violation of Rule 8.4(c) by failing to disclose to the Bankruptcy Court a debtor's payment to a non-attorney professional who had typed the debtor's bankruptcy petition when the attorney knew that such a payment had been made and also failed to disclose the compensation he received from the debtor to the Bankruptcy Court. In *Robaton*, we agreed with the hearing judge's observation that the attorney's omissions "deprived the court and creditors of the ability to find out how much of the debtor's assets has been paid to the attorney." *Id.* at 429, 983 A.2d at 475.

---

(…continued)
    (B) was to be paid by or on behalf of the debtor under a plan under chapter
    11, 12, or 13 of this title; or
    (2) the entity that made such payment.

[21] Fed. R. Bankr. P. 2016(b) provides, in relevant part:
    A supplemental statement shall be filed and transmitted to the United States
    trustee within 14 days after any payment or agreement not previously
    disclosed.

50

The gravamen of the Rule 8.4(c) violation in the instant case is whether Barton intentionally failed to disclose the $526.00 paid by Ms. Winston on Ms. Winston's bankruptcy petition, thereby shielding it from distribution to creditors. Barton asserts that she knew nothing about the transaction and so did not intentionally omit the amount from the bankruptcy estate. Barton, however, had directed Ms. Winston to speak to Mr. Tolbert to handle additional legal issues, and Ms. Winston had paid the additional $526.00 by check to the A. Barton Law Firm, an account to which Barton not only had access, but for which she had received statements as the responsible party. Barton's failure to disclose the $526.00 payment could only benefit her because, otherwise, the money would revert back to the bankruptcy estate. We, therefore, overrule her exception and conclude that Barton violated Rule 8.4(c).

An attorney violates subsection (d) of Rule 8.4 when he or she "engage[s] in conduct that is prejudicial to the administration of justice". Judge Bernard concluded:

> Respondent took a fee in each case but failed to do any cognizable work of value to the client. Therefore, Respondent, in each complaint, violated Rules 1.1, 1.3, and 8.4(a) and (d) of the MLRPC. *See Attorney Grievance Commission v. Nelson,* 425 Md. 344, 363, 40 A.3d 1039, 1050 (2012). The Respondent through her persistent conduct clearly violated Rule 8.4(d), which states that it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice." Rule 8.4 (a) was also violated when Respondent breached the other Rules of Professional Conduct.
> * * *
> Respondent knowingly permitted Mr. Tolbert to handle client intake, which included quoting fees (based upon an evaluation of the prospective client's case) and providing legal advice, and therefore, assisted Mr. Tolbert in engaging in the unauthorized practice of law in violation of Rules 5.5(a) and 8.4(d).

Respondent urges that there was no evidence of a Rule 8.4(d) violation.

51

We previously have held that an attorney violates Rule 8.4(d) when he or she willfully fails to attend a hearing on behalf of his or her client. *See Shakir*, 427 Md. at 206, 46 A.3d at 1168 (attorney's "egregious" behavior of failing to appear at a hearing and file an asylum application violated 8.4(d)); *Attorney Grievance v. Dominguez*, 427 Md. 308, 47 A.3d 975 (2011) (attorney violated 8.4(d) by failing to appear at various hearings). An attorney can also violate 8.4(d) by failing to pursue his or her client's objectives, failing to communicate with his or her client, or failing to refund unearned fees. *See Attorney Grievance v. McCulloch*, 404 Md. 388, 946 A.2d 1009 (2008) (an attorney violated Rule 8.4(d) when a client's divorce complaint was dismissed after the attorney failed to communicate with the client, abandoned representation and failed to return the unearned fee).

Here, Judge Bernard found that Respondent failed to appear on behalf of Ms. Winston and Ms. Tyner at court hearings, and in Ms. Tyner's case, her bankruptcy petition was dismissed as a result. The hearing judge also found that the Bankruptcy Court issued Ms. Simmons a deficiency notice after Barton failed to file the required papers, and that Ms. Simmons was unable to reach Respondent thereafter. Barton's clients retained her to shepherd them through the bankruptcy process, which she failed to do. Judge Bernard also found that Barton failed to both perform any legal services of value in exchange for legal fees she charged and failed to return the unearned fees of Ms. Winston, the Chapmans, the Johnsons, Ms. Barnes, Ms. Miljkovic and Ms. Gray-Knight. We, therefore, overrule her exception and conclude that Barton violated Rule 8.4(d).

52

Subsection (a) of Rule 8.4 provides that it is professional misconduct for an attorney to "violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct". Rule violations, by themselves, are sufficient to support a violation of Rule 8.4(a). *See Dominguez*, 427 Md. at 323-24, 47 A.3d at 985, citing *Attorney Grievance v. Seltzer*, 424 Md. 94, 114, 34 A.3d 498, 510 (2011); *see also Attorney Grievance v. Nelson*, 425 Md. 344, 363, 40 A.3d 1039, 1050 (2012) ("Rule 8.4(a) is violated when other Rules of Professional Conduct are breached."). Barton has violated Rules 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (b), 1.16(d), 5.3(a), (b) and (c), 5.4(b), 5.5(a), 8.4(c) and (d), and therefore, has violated Rule 8.4(a).

With respect to sanction, it is well settled that the purpose of attorney discipline is for the protection of the public, not punishment of the erring attorney. *Attorney Grievance v. Coppola*, 419 Md. 370, 19 A.3d 431 (2011), citing *Attorney Grievance v. Goff*, 399 Md. 1, 922 A.2d 554 (2007). "Imposing a sanction protects the public interest 'because it demonstrates to members of the legal profession the type of conduct which will not be tolerated.'" *Attorney Grievance v. Gallagher*, 371 Md. 673, 714, 810 A.2d 996, 1020 (2002), quoting *Mooney*, 359 Md. at 96, 753 A.2d at 38 (citation omitted). We evaluate an attorney grievance matter on its own merits, considering the particular facts and circumstances in order to determine an appropriate sanction. *Coppola*, 419 Md. at 404, 19 A.3d at 451, citing *Attorney Grievance v. Bleeker*, 414 Md. 147, 176, 994 A.2d 928, 945 (2010). We also look to the "presence or absence of mitigating factors and the prior disciplinary history of the attorney, particularly as it reveals the presence or absence

of misconduct of the same, or similar, kind to that being addressed." *McCulloch*, 404 Md. at 402, 946 A.2d at 1018 (internal citations omitted).

In determining the appropriate sanction, we often look to the aggravating factors found in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions. These include:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
(k) illegal conduct, including that involving the use of controlled substances.

*Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions* (1992); *see Attorney Grievance v. Hodes*, Misc. Docket AG No. 61, Sept. Term, 2013, slip op. at 66 (Dec. 23, 2014).

Here, aggravating factors (b), (c), (d), (g) and (j) are implicated, because Respondent has embodied a dishonest and selfish motive, engaged in a pattern of misconduct, committed multiple offenses, refused to acknowledge the wrongful nature of her conduct and has shown no effort to make restitution, despite a court order to do so.

Factor (b), "dishonest or selfish motive", is present here. Respondent showed a dishonest and selfish motive when she retained unearned fees after she failed to do little,

54

if any, work of value for her clients. *Attorney Grievance v. Stinson*, 428 Md. 147, 50 A.3d 1222 (2012) (applying this factor when an attorney failed to return unearned fees to two clients after being discharged).

Factor (c), "a pattern of misconduct", is also present here. Barton failed to competently represent nine clients in bankruptcy proceedings, over an almost two year period, each of whom was harmed, thereby demonstrating a pattern of misconduct. *See Dominguez*, 427 Md. at 326, 47 A.3d at 985 (applying this factor when an attorney neglected the welfare of at least five clients over a period of sixteen months).

Factor (d), "multiple offenses", is also implicated. An attorney commits multiple offenses when he or she committed numerous violations of the Rules, particularly against different clients. *See Stinson*, 428 Md. at 194, 50 A.3d at 1250 (applying this factor when an attorney committed multiple Rule violations against two clients). Here, Barton committed violations of Rules 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (b), 1.16(d), 5.3(a), (b) and (c), 5.4(b), 5.5(a), 8.4(a), (c) and (d) against nine clients.

Factor (g), "refusal to acknowledge wrongful nature of conduct", is also relevant in the instant case. Respondent has consistently refused to admit any wrongdoing and instead has repeatedly blamed Mr. Tolbert solely for the bulk of the misconduct here. *See Hodes*, slip op. at 68 (applying this factor when an attorney repeatedly blamed his former law firm for his disciplinary proceedings).

Factor (j), "indifference to making restitution", is also present here. Respondent was ordered by the Bankruptcy Court to refund the fees of Ms. Winston, the Chapmans

and the Johnsons, yet has failed to do so. Barton, additionally, has not returned the fees paid by Ms. Tyner, Ms. Miljkovic or Ms. Gray-Knight. *See Attorney Grievance v. Page*, 430 Md. 602, 62 A.3d 163 (2013) (applying this factor when an attorney failed to refund any portion of the advanced fee paid by the client).

We also consider mitigating factors in determining the appropriate sanction, including:

> Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*O'Leary*, 433 Md. at 31, 69 A.3d at 1138, quoting *Attorney Grievance v. Brown*, 426 Md. 298, 326, 44 A.3d 344, 361 (2012).

The hearing judge determined, by a preponderance of the evidence, that one mitigating factor was present in this case—that Barton undertook "interim rehabilitation." Judge Bernard credited Barton's testimony that she undertook over 50 cases pro bono in Maryland, all involving purported victims of Mr. Tolbert; that Barton had to take on a second job in order to personally pay the filing fees associated with these cases, and that Barton "spoke with creditors, mortgage companies, etc. in order to try to protect the interests of the clients that she was handling on a pro bono basis." We, additionally, note that Barton has no prior disciplinary record.

56

Barton, however, excepts to Judge Bernard's finding that, "The Court did not find that the Respondent's illness in any way would mitigate the previously referenced violations." Barton contends that, during the time she operated the Cardinal Law Firm, she suffered from a host of health issues, including endometriosis and uterine fibroid tumors, for which she eventually underwent surgery. Respondent, however, testified that she was still able to handle her cases despite the pain associated with her health issue. We have said that, "[w]hile an illness or a traumatic event may serve as a mitigating factor in determining sanctions, they may do so only when there is some nexus to the misconduct." *O'Leary*, 433 Md. at 32, 69 A.3d at 1138-39. Barton argues, on one hand, that her health situation mitigates her shortcomings, yet on the other, she argues that she was able to competently provide representation to her clients. Barton cannot have it both ways. We overrule her exception.

With the aggravating and mitigating factors in mind, we turn to determining the appropriate sanction. Bar Counsel recommends disbarment, while, at oral argument, Barton's counsel suggested a reprimand, or at worst, a suspension for 90 to 120 days.

The instant case presents a bevy of Rule violations that showcases a pattern of client neglect and a failure to properly supervise nonlawyer employees and includes an instance of misrepresentation before a court. While no other case is on all fours with the present case in terms of sanction, several cases are helpful in its fashioning.

In cases where an attorney exhibits a lack of competence and diligence when attending to client affairs, even when more than one client is involved, we have imposed

an indefinite suspension. For example, in *Attorney Grievance v. Mooney*, 359 Md. at 97-98, 753 A.2d at 39, we indefinitely suspended Mooney, who had violated Rules 1.1, 1.3, 1.4, 5.1, 5.3 and 8.4(d) because of his failure to diligently pursue cases, as well as to appear at trial, and failure to supervise both another attorney and a nonlawyer assistant. He also failed to timely refund a fee and made multiple misrepresentations to the mother of a juvenile client. We noted Mooney's lack of disciplinary history, and stated "that while we have generally suspended lawyers who for the first time have been found to have violated rules relating to competency; we have disbarred subsequent offenders." *Id*. at 98, 753 A.2d at 39.

Client neglect, even when coupled with a finding of misrepresentation in violation of Rule 8.4(c), resulted in the imposition of an indefinite suspension in *Attorney Grievance v. Harrington*, 367 Md. 36, 785 A.2d 1260 (2001). We determined that Harrington made numerous ethical violations when he failed to pursue a client matter, failed to keep the client reasonably informed regarding the status of his case and terminated the client relationship without taking steps to protect the client's interest. Harrington also failed to pursue another client's claim, and when questioned by the client, he falsely led his client to believe that a lawsuit had been filed on her behalf and that he was "waiting for a court date" when no suit had actually been filed. *Id*. at 48, 785 A.2d at 1267. *See also Attorney Grievance v. Cohen*, 361 Md. 161, 760 A.2d 706 (2000) (attorney violated MRPC 1.1, 1.3, 1.4, 8.1(a) and 8.4(c) and (d) in three client matters because he demonstrated incompetence and a lack of diligence, failed to file a client's tax

returns with the bankruptcy court despite indicating to the court that it had been done, misrepresented to a client and Bar Counsel that he had refunded the client's fee, and was uncooperative with Bar Counsel); *Attorney Grievance Comm'n v. David*, 331 Md. 317, 628 A.2d 178 (1993) (indefinitely suspending an attorney who, with respect to four clients, failed to return an unearned fee for a period of nine months, failed to timely remit funds he received on behalf of a client, failed to communicate with his clients, failed to respond to Bar Counsel's requests for information and made a misrepresentation to Bar Counsel concerning whether a client was already represented when she approached the attorney about her case).

In the instant case, Barton failed to file papers to correct Ms. Simmons's deficiency notice; she failed to appear a bankruptcy hearing which resulted in the dismissal of Ms. Tyner's case; failed to appear at a hearing with respect to Ms. Winston; accepted payment from Ms. Barnes, Ms. Miljkovic and Ms. Gray-Knight to file bankruptcy petitions, yet never did any work on their cases; and, she failed to refund the unearned fees of Ms. Winston, the Chapmans, the Johnsons, Ms. Tyner, Ms. Barnes, Ms. Miljkovic and Ms. Gray-Knight. The Respondent, moreover, engaged in a misrepresentation to the Bankruptcy Court by failing to disclose the additional compensation she received from Ms. Winston. Barton's failure to supervise Mr. Tolbert would also result in her being indefinitely suspended as we did with *Kimmel*, 405 Md. at 689, 955 A.2d at 294, and *Zuckerman*, 386 Md. at 386, 872 A.2d at 716, discussed *supra*.

We, therefore, determine that an indefinite suspension in the present case is the appropriate sanction, especially in the absence of any finding of misappropriation. *See Attorney Grievance v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (2001). Although Barton's counsel recommended a reprimand or a 90-120 day suspension, he cited no case law in support, and we have found none.

As a result, the Respondent, Sheron A. Barton, is hereby indefinitely suspended from the practice of law in the State of Maryland.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST SHERON A. BARTON.**